UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| WALTER S. JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:19-CV-377 |
| | ) |
| DAVID B. RAUSCH, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's motion to dismiss [Doc. 8] and motion to dismiss amended complaint [Doc. 23]. Plaintiff has responded [Docs. 12 and 25], and Defendant has replied [Doc. 27]. For the reasons stated below, Defendant's motion to dismiss [Doc. 8] will be **DENIED as MOOT**, and Defendant's motion to dismiss amended complaint [Doc. 23] will be **GRANTED in part** and **DENIED in part**.

**I.    Background**

   *A.    History of Plaintiff*

According to Plaintiff's Amended Complaint, Plaintiff Walter Jackson is a Tennessee resident who challenges the constitutionality of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004, as amended, Tenn. Code Ann. §§ 40-39-201—218 (hereinafter "the Act"). Director David Rausch is the Director of the Tennessee Bureau of Investigation ("TBI") and is sued in his official capacity [Doc. 20, ¶ 24]. Pursuant to the Act, the TBI is required to: maintain

Tennessee's database of sex offenders, maintain an Internet-accessible public sex offender registry, register offenders (along with other law enforcement agencies), develop registration forms, provide statutorily-required notices to registrants, collect registration fees, and coordinate with national law enforcement and the national sex offender registry [*Id*. at ¶ 25].

In 1989, while Plaintiff was living in Florida, his stepdaughter wandered into the bedroom where Plaintiff was masturbating. [*Id*. at ¶ 16]. Plaintiff immediately made his wife aware of what happened, but she did not instigate criminal charges against Plaintiff until 5 years later, during a divorce proceeding. [*Id*.]. Plaintiff, at the advice of counsel in 1996, pled guilty to and was convicted of one count of violating F.S. 800.04(2), described as "a lewd or lascivious act in the presence of a child." [*Id*.] Plaintiff was sentenced to serve 11 months and 29 days in county jail and 10 years of probation on May 28, 1996, but obtained early release for good behavior and successfully completed probation. [*Id*. at ¶ 17]. When Plaintiff pled guilty and was sentenced, Florida did not have a sex offender registry, and Florida's registry did not become effective until June 1, 1997 after Plaintiff was released. [*Id*.] Plaintiff has not been subject to any supervision other than the Florida sex offender registry laws until January 2019. [*Id*.].

Plaintiff decided to move to Monroe County, TN in 2005, and bought land on which to build a cabin. He retained the services of attorney Robert L. Jolley, Jr. ("Attorney Jolley") in 2006 to advise whether Plaintiff was required to register in Tennessee under the Act. [*Id*. at ¶ 18]. Attorney Jolley, after reviewing both Florida and Tennessee statutes, concluded that Plaintiff was not required to register under the Act, but he sent a written

2

inquiry to 10th Judicial Circuit Assistant District Attorney General James Harvey Stutts ("General Stutts") out of an abundance of caution. [*Id*.]. About a month later, General Stutts responded and stated that he concurred with Attorney Jolley's conclusion that Plaintiff did not have to be subject to the Tennessee Sexual Offender Registry statute. [*Id*.]. General Stutts further stated that he did not see that Plaintiff's Florida conviction met the criteria in Tennessee to require registration, nor did the factual basis correspond with any Tennessee offense that would require registration. [*Id*.]. Plaintiff has had no other criminal convictions since the Florida 1996 conviction. [*Id*. at ¶ 19].

In 2007, Plaintiff received two correspondences from the TBI stating that they had received documentation that Plaintiff was a convicted sex offender and advising Plaintiff to register at his local law enforcement agency. [*Id*. at ¶ 20]. Plaintiff also received a letter March 12, 2008 from the Monroe County Sheriff's Office stating that Plaintiff was subject to arrest unless he reported to register by April 2, 2008. [*Id*.]. However, because of the determination by the 10th Judicial District Attorney General's Office that Plaintiff was not required to register under the Act, no warrants were issued, and Plaintiff was not required to register at that time. [*Id*.]. During the next 13 years, Plaintiff established a successful business dependent on public goodwill. [*Id*. at ¶ 22-23].

In January 2019, Plaintiff received a phone call from the Monroe County Sheriff's Office stating that the TBI had directed that Plaintiff either register or be arrested. [*Id*. at ¶ 21]. The Tennessee equivalent of the Florida offense in the indecent exposure act, which under Tenn. Code Ann. § 40-39-202(20)(A)(vii) does not qualify as a conviction for a "sexual offense, except upon a third or subsequent offense, nor is the underlying conduct

3

listed under Tenn. Code Ann. § 40-39-203(31) as a violent offense. [*Id*.]. Therefore, Plaintiff argues, even though his conviction in Florida does not constitute a sexual offense under Tennessee law, after living in Tennessee for 13 years, and being told by the prosecuting authority in the 10th Judicial District of Tennessee that his Florida conviction did not require him to register in Tennessee, he has been forced to register in Tennessee as a sexual offender. [*Id*.].

Plaintiff states that his business has experienced a decided downward trend, he has become publicly labeled a sex offender, and has become subject to various restrictions on where he can live, work, or go since the Act requires all registrants to be listed in a public internet database, along with their home and work addresses and other identifying information. [*Id*.]. He has also retained two separate attorneys who have written three separate letters to the TBI outlining the facts and requesting that Plaintiff be removed from the registry which have been refused by the TBI. [*Id*.]

Under the Act, Plaintiff must report each year in the month of his birthday to an office of the Monroe County Sheriff's Office and pay a fee of $150.00. [*Id*. at ¶ 22]. Initially, Plaintiff was listed on the registry as a "violent sexual offender" who would be subject to registration for life; however, he was advised in June 2019 that, pursuant to Tenn. Code Ann. § 40-39-207(i)(4), he would be eligible to apply for removal from the registry in January 2024. [*Id*.]. Plaintiff claims that he lives with the uncertainty of knowing what interpretation of the Act will prevail at some future date. [*Id*.].

4

### B. History of the Act

Tennessee enacted its first sex offender registration law in 1994. [*Id.* at ¶ 27]. In 2004, the 1994 Act was repealed and replaced by the Act which dramatically expanded the scope and burden of the 1994 Act. [*Id.* at ¶ 35]. Since 2004, the Act has undergone numerous changes and amendments almost every year. [*Id.* at ¶ 36]. Specifically, in 2014, the Act was amended to require individuals classified as an "offender against children" – a designation based solely on whether the alleged victim was 12 years or younger – register for life. [*Id.*]. Plaintiff contends there is no mechanism under the Act to allow him to have his registration obligations eliminated or reduced. [*Id.* at ¶ 46].[1] Further the Act in its current form subjects registrants to obligations, restraints, disabilities, and punishment of a different character and a greater order of magnitude than those imposed by the 1994 Act or even the Act in its original 2004 form. [*Id.* at ¶ 37].

Plaintiff complains about the reporting, surveillance, and supervision requirements of the Act [*Id.* at ¶¶ 50-55]; the impact of the Act's requirements on his family [*Id.* at ¶¶ 56-60]; the limits on his access to housing [*Id.* at ¶¶ 61-63]; the limits on his employment and educational opportunities [*Id.* at ¶ 64-65]; the restrictions on his travel [*Id.* at ¶¶ 66-72], the restrictions on his Internet usage and public speech [*Id.* at ¶¶ 73-77]; and his public stigmatization [*Id.* at ¶¶ 78-79]. Plaintiff also complains that the restrictions and obligations of the Act are so vague he is unable to know whether or not he is in violation of the law and so extensive and pervasive that he is "literally unable to comply with the law" [*Id.* at ¶

---

[1] While Plaintiff was initially required to register for life, he was advised in June 2019 that he would be eligible to apply for removal in January 2024. [Doc. 20, ¶ 45].

5

80]. Plaintiff argues that the requirements of the Act bear no rational relationship to the risk that individual registrants pose to the community [*Id*. at ¶¶ 92-98]. Plaintiff further argues that the "Exclusion Zones" defined by the Act restrict access to employment, housing, and his ability to engage in normal human activity [*Id*. at ¶¶ 99-106].[2] Plaintiff also argues that the Act has fundamentally and retroactively altered the consequences of Plaintiff's plea and conviction. [*Id*. at ¶¶ 107-110].

Plaintiff alleges that the Act: violates the Ex Post Facto Clause of the United States Constitution [*Id*. at ¶ 111]; violates his Due Process rights to travel and work [*Id*. at ¶¶ 112-120]; violates his First Amendment right to free speech [*Id*. at ¶¶ 121-124]; violates Due Process by imposing retroactive restrictions on him and by breaching his plea agreement [*Id*. at ¶¶ 125-130]; violates Due Process by imposing criminal liability without any proof of actual knowledge of the duty to comply with the law and due to vagueness and impossibility [*Id*. at ¶¶ 131-136]; and that passing a law applying the Act to Plaintiff's Florida conviction for activity that is not a crime in Tennessee is an unconstitutional delegation of legislative authority under the Tennessee Constitution [*Id*. at ¶¶ 137-139]. Plaintiff seeks declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201-2202. [*Id*. at ¶¶ 12—13].

---

[2] The "Exclusion Zones" to which Plaintiff refers are contained in Tenn. Code Ann. § 40-39-211. This provision of the Act imposes a variety of geographic restrictions on where registrants may work, reside, or be present, e.g., "within one thousand feet (1,000') of the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public. Tenn. Code Ann. § 40-39-211(a)(1).

## II.  Analysis

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion, a court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party. *DIRECTTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal citations and quotation marks omitted). Dismissal under Rule 12(b)(6) "is proper when there is no set of facts that would allow the plaintiff to recover." *Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir. 1993); *see also Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) ("To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.").

### A. *Motion to Dismiss Original Complaint [Doc. 8]*

Plaintiff's Amended Complaint supersedes the original Complaint, thus making the motion to dismiss the original Complaint moot. *Parry v. Mohawk Motors of Mich., Inc.,* 236 F.3d 299, 306 (6th Cir. 2000) (holding that the amended complaint supersedes all previous complaints and becomes the operative pleading). Therefore, Defendant's Motion to Dismiss Original Complaint [Doc. 8] will be **DENIED as MOOT**.

7

### B. Motion to Dismiss Amended Complaint [Doc. 23]

#### a. Count 1 – Ex Post Facto Violation

Defendant argues that Plaintiff fails to state a claim for a violation of the Ex Post Facto Clause as the Act does not have an unconstitutional punitive effect as applied to Plaintiff. [Doc. 24, pp 5-6]. Defendant argues that the intent of the legislature was to establish a civil proceeding, thus the registration requirements are not punitive in nature. [*Id.*]. Further, Defendant argues that Plaintiff has failed to show the punitive nature of the Act as applied to Plaintiff. [*Id*. at 8]. Plaintiff argues that the Sixth Circuit's holding in *Does v. Snyder*, 834 F.3d 696 (6th Cir. 2016) is controlling and that the individual provisions of a sex offender registry law can cumulatively be punitive and violate the *ex post facto* and due process clauses of the Constitution. [Doc. 25, pp. 5-6].[3]

The Supreme Court has established the framework for considering such challenges by adopting what has been described as an "intent – effects" test: (1) did the legislature intend to impose punishment; and (2) if not, is the statutory scheme "so punitive in either purpose or effect as to negate [the State's] intention to deem it civil." *Smith v. Doe*, 538 U.S.84, 92 (2003); *Doe v. Snyder*, 834 F.3d 696, 700 (6th Cir. 2016). The *Smith* Court noted, "only the clearest proof will suffice to override legislative intent and transform what

---

[3] Despite Defendant's argument to the contrary, *Snyder* is binding precedent upon this Court. Compare *Doe v. Rausch*, 382 F. Supp. 3d 783, 795 (E.D. Tenn. 2019) (Defendant also argues that *Snyder* is not controlling . . . , but this Court cannot summarily disregard binding precedent from the Sixth Circuit."), and *Doe v. Haslam*, No. 3:16-CV02862, 2017 WL 5187117, at *20 (M.D. Tenn. Nov. 9, 2017) ("*Snyder* . . . is the law of this Circuit and is binding on the Court."), with *Clark v. Gwyn*, No. M2018-00655-COA-R3- CV, 2019 WL 1568666, at *7 (Tenn. Ct. App. Apr. 11, 2019) (Tennessee Court of Appeals is "not bound" by the Sixth Circuit's ruling in *Snyder*; "it is merely persuasive authority.").

has been denominated a civil remedy into a criminal penalty." 538 U.S. at 92 (internal quotations omitted). Plaintiff has not alleged that the Act was intended to impose punishment, so the test is whether the Act has a punitive effect.

In analyzing the effects of the Act, the Supreme Court has instructed the Court to consider five, non-exhaustive factors: (1) Does the law inflict what has been regarded in our history and traditions as punishment? (2) Does it impose an affirmative disability or restraint? (3) Does it promote the traditional aims of punishment? (4) Does it have a rational connection to a non-punitive purpose? (5) Is it excessive with respect to this purpose? *Snyder*, 834 F.3d at 701 (citing *Smith*, 538 U.S. at 97).

As the Sixth Circuit has discussed, the Act's restrictions do meet the general, and widely accepted, definition of punishment and specifically resembles the punishment of banishment. *Id*. at 701-02. Further, like the Michigan statute in *Snyder*, the Act places significant restraints on how registrants can live their lives due to the restrictions on where registrants may live, work, and travel. *See id*. at 703. The Act advances all of the traditional aims of punishment: incapacitation, retribution, and deterrence, and does so in ways that only tenuously relate to legitimate, non-punitive purposes. *See id*. Finally, the negative effects of the Act on Plaintiff outweigh the positive effects of the Act. *See id*. at 704.

Accepting the allegations of the Amended Complaint as true, the Court concludes that Plaintiff has alleged a plausible claim that the Act as applied to Plaintiff is so punitive in effect as to violate the Ex Post Facto Clause. *See Doe v. Miami-Dade Cty*., 846 F.3d 1180, 1185—86 (11th Cir. 2017). Accordingly, Defendant's motion to dismiss Count 1 will be **DENIED**.

### b. Counts 2-3 and 5-8 – Due Process Claims

#### i. *Count 2 – The Right to Travel*

Count 2 of the Amended Complaint alleges that the Act, specifically Tenn. Code Ann. § 40- 39-204(h), violates Plaintiff's right to travel in violation of the Due Process Clause [Doc. 20 at ¶¶ 66—72, 112—115]. Defendant correctly argues that the travel reporting requirements of Tenn. Code Ann. § 40-39-204(h) only apply to international travel. Because international travel, as opposed to interstate travel, is not a fundamental constitutional right, Defendant argues that Count 2 does not state a Due Process claim [Doc. 24, p. 10].

"Freedom to travel throughout the United States has long been recognized as a basic right under the Constitution." *Attorney General of N.Y. v. Soto-Lopez*, 476 U.S. 898, 901 (1986) (quoting *Dunn v. Blumstein*, 405 U.S. 330, 338 (1972)). "The constitutional right of interstate travel is virtually unqualified… By contrast, the 'right' of international travel has been considered to be no more than an aspect of the 'liberty' protected by the Due Process Clause of the Fifth Amendment. As such this 'right,' the Court has held, can be regulated within the bounds of due process." *Califano v. Aznavorian*, 439 U.S. 170, 176 (1978) (citations omitted); see *Beydoun v. Sessions*, 871 F.3d 459, 467 (6th Cir. 2017) ("the freedom to travel outside the United States must be distinguished from the right to travel within the United States") (emphasis in original) (citations omitted).

10

The Act's restriction on international travel requires all registrants to provide at least twenty-one (21) days' advance notice before traveling out of the country.[4] The notice period can be shortened to twenty-four (24) hours' notice for those registrants who travel out of the country frequently for work or other legitimate purpose. Plaintiff has not alleged any specific facts that these regulations have impaired his ability to travel outside of the country or that he has attempted to travel outside of the country, and instead has relied solely on hypothetical situations: "[i]f Plaintiff travels"; "[d]epending on how long he travels"; "if Plaintiff goes on vacation"; and "the requirement under Tennessee law that Plaintiff register as a sex offender will likely bar him from traveling anywhere else in the world." [Doc. 20 at ¶¶ 68—69, 72]. Plaintiff has presented no allegation or legal argument that the advance notice requirement of Tenn. Code Ann. § 40- 39-201(h) is an unreasonable governmental regulation. *See Doe & Doe v. Haslam*, Nos. 3:16-cv-02862, 3:17-cv-00264, 2017 WL 5187117, *16 (M.D. Tenn. Nov. 9, 2017) (Crenshaw, J.) ("Insofar as the Court recognizes a constitutional right to international travel, that right is not so highly protected that it is violated by the passage of a 21-day notification requirement based on the important public purposes underlying the Act").

The Amended Complaint also alleges that, if he travels, Plaintiff must comply with the sex offender laws in other jurisdictions, and he may have to register as a sex offender

---

[4] This section provides "[e]ach offender shall report to the designated law enforcement agency at least twenty-one (21) days before traveling out of the country; provided, that offenders who travel out of the country frequently for work or other legitimate purpose, with the written approval of the designated law enforcement agency, and offenders who travel out of the country for emergency situations shall report to the designated law enforcement agency at least twenty-four (24) hours before traveling out of the country." Tenn. Code Ann. § 40-39-204(h).

11

in other jurisdictions [Doc. 20, ¶ 68]. Plaintiff further hypothesizes as to the complications he might face in trying to comply with the sex offender laws in Florida if he were to vacation there [*Id.* at ¶ 69].

As these allegations are purely speculative, they do not allege a plausible claim for relief. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 ("[f]actual allegations must be enough to raise a right to relief above the speculative level"). As noted above, the cited provision of the Act only concerns international travel and Plaintiff has presented no allegation or legal argument as to how a provision on international travel could impair his right to interstate travel. Further, Plaintiff has presented no allegation or legal argument as to how Defendant can be liable for Plaintiff's inability to comply with the laws of other states. Finally, Plaintiff complains that a recent federal law, Int'l Megan's Law to Prevent Child Exploitation & Other Sexual Crimes Through Advanced Notification of Traveling Sex Offenders, Pub. L. No. 114-119, 130 Stat. 15 (2016), requires registered offenders to report information on intended international travel and authorizes the United States government to notify foreign countries when a registered offender is traveling to that country [Doc. 20, ¶ 71]. Thus, "[i]t is almost certain" he will be prohibited from entering another country and he will likely be barred from traveling anywhere else in the world [*Id.* at ¶ 72]. Again, this claim is purely speculative, and Plaintiff has presented no allegation or legal argument as to how Defendant, who is responsible for enforcing a Tennessee statute, can be liable for the effects of a federal statute.

In short, the Court agrees that Plaintiff has failed to state a plausible claim for violation of his Due Process rights as to travel. Accordingly, Defendant's motion to dismiss Count 2 will be **GRANTED**.

### ii. Count 3 – The Right to Work

Defendant argues that Count 3, which alleges that the Act violates Plaintiff's fundamental right to engage in the common occupations of life, fails to state a claim for relief. [Doc. 24, p. 11]. Defendant correctly notes that Plaintiff has not alleged a violation of the existing right of unjust termination of governmental employment or an inability to find employment. [*Id.*]. In fact, Plaintiff claims he has spent years establishing a successful business which has experienced a downward trend since his registration. [Doc. 20, ¶ 21]. However, Plaintiff does not allege that the Act has made it impossible for him to keep his business. [*Id.*].

The Amended Complaint alleges that the Act bars Plaintiff from working within 1,000 feet of any "public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public" [Doc. 20, ¶ 64].[5] Plaintiff complains that this makes "a substantial number of employments unavailable as a matter of law" [*Id.*]. However, as Defendant argues, Plaintiff has not alleged any job which he has sought and been denied, and Defendant asserts that Plaintiff admits he is employed in the same business he

---

[5] Pursuant to 2018 Tenn. Pub. Acts 643 and effective July 1, 2018, the Act now defines "playground" as "any indoor or outdoor facility that is intended for recreation of children and owned by the state, a local government, or a not-for-profit organization, and includes any parking lot appurtenant to the indoor or outdoor facility."

established when he first moved to Tennessee. [Doc. 24, p. 11]. As Defendant notes, there is no general right to private employment and Plaintiff has not alleged a termination of government employment. *See Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999). Plaintiff has simply not alleged a plausible claim for relief that the Act has violated his Due Process rights with respect to employment. Accordingly, Defendant's motion to dismiss Count 3 will be **GRANTED.**

### *iii. Count 5 – Retroactivity*

Defendant argues that Count 5, which alleges that the retroactive application of the Act is harsh or oppressive or violates the principles of fundamental fairness, should be dismissed because the Act is justified by a rational, legitimate legislative purpose. [Doc. 24, p. 15]. Plaintiff's argument is similar to his argument regarding his *ex post facto* claim (Count 1). As the Court has concluded that Plaintiff has stated a plausible *ex post facto* claim that the Act as applied to Plaintiff is punitive, the Court will conclude the same as to Count 5 at this time to allow the record to be fully developed. The Court, however, does not express an opinion regarding the ultimate merits as to either Count 1 or Count 5. Accordingly, Defendant's motion to dismiss Count 5 will be **DENIED**.

### *iv. Count 6 – Breach of Plea Agreement*

Defendant argues that Count 6, which alleges that the Act constitutes a breach of the promise made to Plaintiff by the District Attorney's Office for the 10th Judicial District, fails to state a claim for relief. [Doc. 24, pp. 15-16]. Defendant correctly notes that Plaintiff

14

has not been charged with any crime or entered into a plea agreement in Tennessee [*Id*. at 16]. Plaintiff did not directly respond to this claim.

The Amended Complaint alleges that Plaintiff was promised that he would not have to register under the Act when he first moved to Tennessee and attached a letter from the 10th Judicial District Attorney's Office. [Doc. 20, ¶¶ 128-130; Doc. 20, Ex. 2]. Plaintiff alleges that this letter constitutes a promise made by the District Attorney's office. [*Id*.]. However, Defendant argues that the letter is an opinion and not a promise as evidenced by the wording of the letter and the advice that Plaintiff should seek a letter from the Registry administering agency as his surest protection from having to register. [Doc. 24, p. 15; Doc. 20, Ex. 2].

The letter states:

> I concur in your conclusion that he [Plaintiff] does not appear to be subject to the Tennessee Sexual Offender Registry statute. More specifically, I do not see that his conviction offense meets the criteria in Tennessee to require registration. Review of the factual basis for the charge and the law in Florida at the time does not correspond with any Tennessee offense that would require registration. I am happy to provide you with my interpretation of this statute. You might suggest to your client that he keep a copy of this letter with his personal effects at home should the need to address the same further occur in the future. I suppose a like letter from the Registry administering agency would be his surest protection, but I am fully willing to stand behind this letter should the need arise within the confines of this Judicial District.

[Doc. 20, Ex. 2]. The Court notes that this letter is dated November 15, 2006, and the Act has been amended multiple times between 2006 and now. The Court also notes that General Stutts is not a party in this lawsuit, and Plaintiff has presented no allegation or legal argument as to how Defendant, who is only responsible for enforcing a Tennessee statute, can be liable for a breach of a promise made by another entity. Further, Plaintiff has not

15

established that General Stutts had authority to make any "promise" to Plaintiff regarding the registration requirements, as General Stutts admits that a letter from the Registry administering agency would be his surest protection, which would be TBI. As such, Plaintiff has failed to state a claim for which relief can be granted. Accordingly, Defendant's motion to dismiss Count 6 will be **GRANTED.**

### *v. Counts 7-8 -Criminal Liability without Knowledge and Void for Vagueness and Impossibility*

It is unclear from the Amended Complaint whether Plaintiff is asserting procedural or substantive due process claims for these counts. However, Plaintiff asserts that the Due Process claims should be considered in tandem with the *ex post facto* claims. [Doc. 25, pp. 14-15]. As the Court has allowed Plaintiff's *ex post facto* claim (Count 1) to proceed, the Court will allow these Due Process claims to proceed. Further, as these claims are largely fact-dependent, the factual record must be more developed before the Court can rule on these due process claims. *See Haslam*, 2017 WL 5187117 at *18-19; *see also Doe v. Haslam*, No. 3:17-cv-217, 2017 WL 4782853 (E.D. Tenn. Oct. 23, 2017) (Phillips, J.); *Doe v. Gwyn*, No. 3:17-CV-504, 2018 WL 1957788, at *11 (E.D. Tenn. Apr. 25, 2018).[6]

Accordingly, Defendant's motion to dismiss Counts 7-8 will be **DENIED**.

---

[6] Plaintiff makes the argument that the Act is vague due to the uncertainty of enforceability for Plaintiff for the first time in his response brief. He has also attached an email conversation as an exhibit in his response to the motion to dismiss, however, as this motion revolves around the sufficiency of the Amended Complaint, the Court is not considering the new argument and new evidence in reaching its decision. ("When reviewing a motion to dismiss, the district court may not consider matters beyond the complaint." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009); *see also Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 576 (6th Cir. 2008)).

### C. Count 4 – First Amendment

Defendant argues that Plaintiff's allegations that the Act's requirements violate the First Amendment do not state a claim upon which relief can be granted as he has failed to "raise a plausible claim that a substantial number of instances exist in which the Internet reporting requirements would be applied unconstitutionally." [Doc. 24, p. 14].

Plaintiff argues that the Act's requirement that Plaintiff provide law enforcement a complete listing of his e-mail addresses, usernames, social media accounts, instant messaging names, and screen names substantially interferes with Plaintiff's access to the internet as a forum for speech and imposes a blanket prohibition on Plaintiff's ability to engage in anonymous internet speech. [Doc. 25, p. 10]. Further Plaintiff argues that he has satisfied his burden for a plausible facial challenge under the First Amendment by alleging that a substantial number of instances exist in which the law cannot be applied constitutionally based on the language of the statute and specified facts. [*Id.*].

Defendant is correct that the reporting requirements of the Act are content-neutral as they do not restrict certain viewpoints or modes of expression. *See Turner Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994) ("regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny"); *Planet Aid v. City of St. Johns, MI*, 782 F.3d 318, 326 (6th Cir. 2015). To withstand intermediate scrutiny, laws must be "narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels for communication of the information." *Crookston v. Johnson*, 841 F.3d 396, 403 (6th Cir. 2016) (internal citations omitted).

The Court is simply unable to conclude that the Act is sufficiently narrowly tailored without a full factual record. Faced only with the bare allegations of the Amended Complaint and the Act's language, the Court is unable to determine the real-world effect of the Act on internet use or the burden the Act's restrictions place on Plaintiff's internet speech, let alone whether the requirements serve a significant government interest. *See Haslam*, 2017 WL 5187117, at *18; *see also Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989) ("[g]overnment may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals"). Accordingly, Defendant's motion to dismiss Count 4 will be **DENIED**.

### D. Count 9 – Unconstitutional Delegation

Defendant argues that Plaintiff has failed to state a claim for relief of unconstitutional delegation because the Court lacks subject matter jurisdiction over this claim. [Doc. 24, p. 19]. Defendant argues that as this claim is entirely premised on an alleged violation of the Tennessee Constitution, and not the United States Constitution, the Court does not have jurisdiction under 42 U.S.C. § 1983 as Plaintiff asserts in his Amended Complaint. [*Id.* at 20]. Defendant states that the Court should not exercise supplemental jurisdiction over this claim pursuant to 28 U.S.C.A. § 1367(c)(1) as it presents a novel and complex issue of state law. [*Id.*, n. 7]. Alternatively, should the Court consider this claim, Defendant argues that it fails for two reasons: 1)"basing an offender's registration status when they arrive in Tennessee on their registration status in another state is not a delegation of legislative authority" and 2) "the out-of-state offender registration does not encroach on the policy concerns that gave rise to the nondelegation doctrine." [*Id.*].

18

Plaintiff argues that the state law claim is based on the same operative facts as the federal constitutional claims which are based, in part, on a decision by the United States Court of Appeals for the Sixth Circuit, thus supplemental jurisdiction is proper. [Doc. 25, p. 20]. Further, Plaintiff argues that the issues raised are not novel or complex as Tennessee has a well-developed body of law on the issue of non-delegation of legislative power. [*Id*. at 21].

"In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C.A. § 1367. A district court may decline to exercise supplemental jurisdiction, among other reasons, if the claim "raises a novel or complex issue of State law. *Id*. The Sixth Circuit has consistently affirmed that supplemental jurisdiction is a "doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn,* 331 F.3d 524, 535 (6th Cir. 2003) (internal quotation marks omitted). Courts should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues. *Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1412 (6th Cir. 1991).

Here, neither party has cited to a Tennessee case, nor has the Court found any such case in its own research, where the issue of registration for conviction for a criminal act in another state which does not constitute a criminal act under Tennessee law has been addressed. As this issue is a novel and complex issue of State law, the Court declines to

19

exercise jurisdiction over this claim. Accordingly, Defendant's motion to dismiss Count 9 will be **GRANTED**.

### III. Conclusion

Accordingly, for the reasons above, Defendant's motion to dismiss complaint [Doc. 8] will be **DENIED as MOOT**, and Defendant's motion to dismiss amended complaint [Doc. 23] will be **GRANTED** as to Counts 2, 3, 6 and 9; and **DENIED** as to Counts 1, 4-5 and 7-8. An order consistent with this opinion will be entered.

**IT IS SO ORDERED.**

ENTER:

<u>    s/ Leon Jordan    </u>
United States District Judge

20

Case 3:19-cv-00377-RLJ-DCP   Document 34   Filed 12/21/20   Page 20 of 20   PageID #: 378