UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| WALTER S. JACKSON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:19-CV-377 |
| DAVID B. RAUSCH, | ) ) ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

This matter is before the Court on Defendant's motion for partial summary judgment [Doc. 66]. Plaintiff has responded [Doc. 73], and Defendant has filed a reply brief [Doc. 74]. Oral argument is not necessary, and this matter is now ripe for review. For the reasons stated below, Defendant's motion for partial summary judgment [Doc. 66] will be **GRANTED**, and this action will be **DISMISSED**.

**I.   Background**

The facts of this case are largely undisputed by the parties. In its memorandum opinion addressing the cross motions for summary judgment previously filed by the Parties [Doc. 70], the Court provided the facts of this case and background of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004, as amended, Tenn. Code Ann. §§ 40-39-201-218 ("the Act"). The Court will not reiterate that background again but incorporates the section of that memorandum opinion labeled "Background," as if contained herein.

**II.     Analysis**

Defendant's motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment. Rule 56(a) provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion[.]" Fed. R. Civ. P. 56(c)(1). This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Additionally, a party may "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Moreover, mere conclusory and unsupported allegations, rooted in speculation, are insufficient to meet this burden. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003).

To defeat a motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

2

Case 3:19-cv-00377-RLJ-DCP   Document 75   Filed 11/17/21   Page 2 of 17   PageID #: 967

242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id*. at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id*. at 251-52.

### A. Count 4 – First Amendment

Defendant argues that the record does not contain any evidence that the Act's alleged burdens on First Amendment rights outweigh the State's interest in public safety, and that the Act, both on its face and as applied to Plaintiff, does not violate the First Amendment. [Doc. 67]. Plaintiff responds that the Act's requirement that Plaintiff report information about his internet accounts and activity to law enforcement violates the First Amendment by substantially interfering with his access to the internet as a forum for speech by, *inter alia*, imposing a blanket prohibition on his ability to engage in anonymous internet speech. [Doc. 73]. Defendant replies that Plaintiff does not provide evidence that the law has a facially unconstitutional chilling effect, nor does Plaintiff provide evidence that the requirement to provide usernames for his internet accounts has had a chilling effect on him. [Doc. 74].

Plaintiff raises facial and as-applied attacks against the Act's internet reporting requirements under the First Amendment, which is incorporated to the states through the Fourteenth Amendment. Specifically, Plaintiff argues that, on its face, the Act completely prevents anonymous First Amendment expression, due to the compulsion to report information. [Doc. 73, p. 6]. The Act requires registrants to report "internet identifiers," which are "[a] complete listing of the offender's electronic mail address information,

3

including usernames, any social media accounts the offender uses or intends to use, instant message, other internet communication platforms or devices, and the offender's username, screen name, or other method by which the offender accesses these accounts or websites." Tenn. Code Ann. § 40-39-203(i)(17). Though the "language of this statutory requirement is confusing," it is apparent that the Act requires a registrant "to disclose any username or account he or she uses for an "Internet communication platform[]." *Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *17 (*quoting* Tenn. Code Ann. § 40-39-203(i)(17)). This information is not publicly available, *see* Tenn. Code Ann. § 40-39-203(m), 206(d)(1)–(16), but may be shared with "appropriate law enforcement agencies" without apparent limitations, Tenn. Code Ann. § 40-39-214(b), and any "business or organization that offers electronic communication or remote computing services for the purpose of prescreening users or for comparison with information held by the requesting business or organization." Tenn. Code Ann. § 40-39-203(m). Registrants have three days, excluding holidays, to report any changes to, or creation of, internet identifiers. Tenn. Code Ann. § 40- 39-203(a)(7). The Court will first discuss the nature of anonymous speech rights then will address this constitutional challenge, both facially or as it is applied to Plaintiff.

### 1. Anonymous Speech

The Supreme Court has held that an author's desire to speak anonymously "is an aspect of the freedom of speech protected by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995). Because "[a]nonymity is a shield from the tyranny of the majority[,] [i]t thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—

4

and their ideas from suppression—at the hand of an intolerant society." *Id.* at 357 (citation omitted). Accordingly, the protection of anonymous speech under the First Amendment extends to the internet. *Doe v. Snyder*, 101 F. Supp. 3d 672, 701 (E.D. Mich. 2015) (citations omitted); *see also Reno v. ACLU*, 521 U.S. 844, 870 (1997) (explaining that the internet allows "any person with a phone line [to] become a town crier with a voice that resonates farther than it could from any soapbox" and that "our cases provide no basis for qualifying the level of First Amendment scrutiny that should be applied to this medium"); *Doe v. Shurtleff*, 628 F.3d 1217, 1222 (10th Cir. 2010) (explaining that First Amendment speech protections extend to the medium of the internet). In the context of sex offender laws, states have generally adopted two approaches to guard against the use of the internet to exploit vulnerable populations: (1) banning registrants from accessing particular types of internet activity, *see, e.g., Packingham v. North Carolina*, 137 S.Ct. 1730 (2017) (banning use of social media); *Doe v. Nebraska*, 898 F.Supp.2d 1086 (D. Neb. 2012) (banning use of social media); or (2) requiring registrants to report internet account information, with varying degrees of specificity, purposes, and means of reporting. *See, e.g., Doe v. Harris*, 772 F.3d 563, 577 (9th Cir. 2014) (requiring registrants to report internet identifier changes within twenty-four hours); *White v. Baker*, 696 F. Supp. 2d 1289, 1294 (N.D. Ga. 2010) (requiring registrants to report internet identifier changes within seventy-two hours). Regardless, "the 'distinction between laws burdening and laws banning speech is but a matter of degree.'" *Harris*, 772 F. 3d at 572 (*quoting Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 565–66 (2011)). The Act falls within the second category, and although it does not directly prohibit speech, it does burden a registrant's "ability and willingness to

5

speak on the Internet," *Harris*, 772 F.3d at 572, and may create an "affirmative obligation" to report activity should they seek to create or change their internet identifier. *See Lamont v. Postmaster Gen.*, 381 U.S. 301, 307 (1965).

Anonymous speech rights, like all First Amendment speech rights, are not absolute. *See White v. Baker*, 696 F. Supp. 2d 1289, 1303–04 (N.D. Ga. 2010) ("*McIntyre* also carefully notes that not all speech—and specifically not all anonymous speech—is constitutionally protected." (citing 514 U.S. at 357)); *see also Haslam*, No. 3:16-CV02862, 2017 WL 5187117, at *17. Some burdens, like "the mandatory disclosure in public of a speaker's identity," have been found to be unconstitutionally weighty, while other burdens, such as providing "information to the government that could later be used to trace speech back to its source," are not. *See Shurtleff*, 628 F.3d at 1222– 23 (citations omitted).

### 2. Facial and As-Applied Challenge

#### a. Facial Challenge

Generally, a statute is facially unconstitutional if there are "no set of circumstances exists under which the Act would be valid," *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798 n. 15 (1984) (explaining that a statute is facially invalid when "every application of the statute created an impermissible risk of suppression of ideas"). However, due to the unique nature of free speech rights, "[t]he Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002). As a result, the First Amendment provides "'a second type of facial challenge,' whereby a law may be invalidated as overbroad if 'a

6

substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010) (internal quotations omitted). Though less exacting, overbreadth analysis is still "'strong medicine' that is used 'sparingly and only as a last resort.'" *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988) (internal quotations omitted). Accordingly, courts in the Sixth Circuit "will not apply the 'strong medicine' of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law." *Speet v. Schuette*, 726 F.3d 867, 878 (6th Cir. 2013) (internal quotations omitted). In other words, a plaintiff may not simply attempt to 'leverag[e] a few alleged unconstitutional applications of the statute into a ruling invalidating the law in all of its applications.'" *Id* (internal quotations omitted). However, courts are encouraged to use "this expansive remedy" if "the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech," particularly when "the overbroad statute imposes criminal sanctions." *Speet*, 726 F.3d at 878 (internal quotations omitted).

Here, the record before the Court only identifies the almost non-existent effects that the Act's internet identifier reporting requirements have had on Plaintiff. This creates two barriers to the Court's adjudication of Plaintiff's facial attack. First, "the parties fail[ed] to describe the instances of arguable overbreadth of the contested law," *Speet*, 726 F.3d at 878 (internal quotations omitted); *see Glenn v. Holder*, 690 F.3d 417, 422 (6th Cir. 2012) (finding that the record was "'utterly barren about whether some, many, indeed any, [other people] [were] affected by . . . application of the statute.'" (internal quotations omitted); *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 336 (6th Cir. 2009) (stating that the

7

plaintiff bears "'the burden of demonstrating . . . substantial overbreadth.'" (internal quotations omitted) (emphasis added)); *United States v. Coss*, 677 F.3d 278, 289 (6th Cir. 2012) (stating that a plaintiff "must demonstrate from the text of the statute and from actual fact that a substantial number of instances exist in which the law cannot be applied constitutionally." (internal quotations omitted) (emphasis added); *accord Speet*, 726 F.3d at 878 (comparing the ample record before the court to instances where the record was insufficient for facial review for First Amendment overbreadth). Accordingly, without evidence that the statute is overbroad in relation to other registrants, the Court certainly cannot conclude that it is substantially overbroad. Second, though "[l]itigation by hypothetical" is "sometimes required in free-speech cases," *Connection Distrib. Co.*, 557 F.3d at 335 (citations omitted), Plaintiff's arguments are limited to comparing the Act to three related, yet distinguishable cases—*Shurtleff*, *Harris*, and *Packingham*. [Doc. 73, pp.7-10].

In *Packingham*, the Supreme Court struck down a North Carolina law on First Amendment grounds that prohibited registered sex offenders from "access[ing] a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages." 137 S. Ct. at 1733 (quoting N.C. Gen. Stat. Ann. §§ 14– 202.5(a), (e) (2015)). Here, the Act does not ban speech on any internet platforms, and though "the distinction between laws burdening and laws banning speech is but a matter of degree," *Harris*, 772 F. 3d at 572, the degree of difference between these two statutes is substantial.

8

In *Shurtleff*, the United States Court of Appeals for the Tenth Circuit upheld a Utah law that required registered sex offenders to report internet identifiers in the face of a First Amendment attack. 628 F.3d at 1225. The Tenth Circuit noted that an unconstitutional chilling effect has never arisen "merely from the individual's knowledge that a governmental agency was engaged in certain [information-gathering] activities or from the individual's concomitant fear that, armed with the fruits of those activities, the agency might in the future take some other and additional action detrimental to that individual." *Id*. (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972)). Likewise, the Tenth Circuit noted that "the Supreme Court has suggested a distinction between the mandatory disclosure in public of a speaker's identity and the requirement that a speaker provide information to the government that could later be used to trace speech back to its source." *Id*. at 1222–23 (citing *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999); *McIntyre*, 514 U.S. at 342). Here, the Act does not expressly limit law enforcement's use of internet identifier information like Utah's statute, but Plaintiff has not provided authority for the notion that this has a facially unconstitutional chilling effect, and "[t]his court is not obligated to research and construct legal arguments open to parties, especially when they are represented by counsel as in this case." *John v. Barron*, 897 F.2d 1387, 1393 (7th Cir. 1990), cert. denied, 498 U.S. 821 (1990); *see also Laird*, 408 U.S. at 11 (noting that a chilling effect does not arise only because a governmental agency is gathering information and could take future action).

In *Harris*, the Ninth Circuit concluded that the CASE Act "unnecessarily chills protected speech in at least three ways: the [CASE] Act does not make clear what sex

9

offenders are required to report, there are insufficient safeguards preventing the public release of the information sex offenders do report, and the 24–hour reporting requirement is onerous and overbroad." 772 F.3d 563, 578 (9th Cir. 2014). Here, registrants have 72 hours, excluding holidays, to notify law enforcement of a change in internet identifiers; the information reported by registrants is not available for public release; and the internet identifier requirements are not so unclear that registrants would not know what they are required to report. While the Act's internet identifier reporting requirements are not a paragon of statutory draftsmanship, *see Haslam*, No. 3:16-CV02862, 2017 WL 5187117, at *17, the Court will not "answer abstract questions" with only the undersigned's "judicial imagination" as a guide, *Connection Distrib. Co.*, 557 F.3d at 341 (citing *United States v. Raines*, 362 U.S. 17, 22 (1960)), and this "contextual vacuum . . . counsels in favor of choosing discretion over valor." *Id.* (citing *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988)).

Thus, without concrete evidence that the Act's internet identifier reporting requirements are substantially overbroad or a sufficient basis for abstract constitutional review, Plaintiff's facial First Amendment attack cannot survive summary judgment. *See generally Doe v. City of Albuquerque*, 667 F.3d 1111, 1124 (10th Cir. 2012) (stating that "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." (quoting *Citizens United v. FEC*, 558 U.S. 310, 331 (2010))).

*b. As-Applied Challenge*

10

As for Plaintiff's as-applied challenge, Defendant argues that the record does not show that the internet-monitoring requirements have had a chilling effect on Plaintiff's internet usage. [Doc. 73, p. 9]. On the contrary, the facts show that Plaintiff makes extensive and regular use of the internet as he has two active email addresses, "hundreds" of internet accounts for both his business and his personal use, and he has no interest in other forms of social media such as Twitter or Facebook as Plaintiff deleted his accounts well before he was required to register. [*Id.*]. Further, Defendant argues that Plaintiff calls the supervising detectives when he has questions regarding complying with the Act and has never been charged or received a warning for any violations. [*Id.*, at 9-10]. Plaintiff's response does not address any chilling effect the Act has had on Plaintiff directly, relying exclusively on his conclusory assertion that the Act, under no circumstances, permits anonymous political speech. [Doc. 74, p. 10].

The record simply does not support Plaintiff's as-applied challenge. There are no facts that show how Plaintiff has been unable to use the internet due to the Act's requirements, nor are there facts that show that Plaintiff's internet usage has been hindered in any way by the Act.

### 3. Conclusion

In sum, Plaintiff has not provided concrete evidence that the Act's internet identifier reporting requirements are substantially overbroad or a sufficient basis for abstract constitutional review, so his facial First Amendment attack must fail. Plaintiff has also not provided factual support that the Act, as applied to him, is unconstitutional, so his as-

11

Case 3:19-cv-00377-RLJ-DCP   Document 75   Filed 11/17/21   Page 11 of 17   PageID #: 976

applied First Amendment attack must fail. Accordingly, Defendant's motion for summary judgment as to Count 4 [Doc. 66] will be **GRANTED** and Count 4 will be **DISMISSED**.

### B. *Count 7 – Criminal Liability Without Actual Knowledge Claim*

Defendant argues that the Act does not punish passive behavior because it contains a scienter requirement. [Doc. 73, p. 12]. Plaintiff's response focuses mostly on the previously considered due process arguments regarding Plaintiff's reclassification and the initial classification of registrants. [Doc. 74, pp. 10-14]. However, Count 7 does not address due process and the classification of Plaintiff. In his Amended Complaint, Plaintiff contends that the Act's provisions that bar Plaintiff from residing, working, or loitering in the relevant exclusion zones "impose[] criminal liability, without requiring proof of actual knowledge of the duty to comply with the Act, for passive conduct that does not 'alert the doer to the consequences of his deed." [Doc. 20, p. 44 (quoting *Lambert v. People of the State of California*, 355 U.S. 225, 228 (1957))]. However, Plaintiff has provided no further support for this claim. Plaintiff only addresses the exclusion zones as his last argument for vagueness and relies on a Fourth Circuit case, *Doe v. Cooper*, 842 F.3d 833 (4th Cir. 2016), to argue that the vague phrases in the Fourth Circuit are comparable to phrases in the Act. [Doc. 73, p. 15]. Defendant argues that Fourth Circuit case involved a conflict between specific and general statutory provisions, which is not at issue here, and thus Plaintiff has not provided any evidence to show that the Act imposes criminal liability without actual knowledge. [Doc. 74, pp. 4-5].

Tenn. Code Ann. § 40-39-211, the provision of the Act at issue, criminalizes conduct undertaken *with knowledge*. Specifically, by the language of the statute, criminal

12

liability only arises if Plaintiff *knowingly* takes up residence in, undertakes employment in, or loiters in the specified areas. *See* Tenn. Code Ann. § 40-39-211. Under the Tennessee Criminal Code, "a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b). In short, Plaintiff has not shown that the Act imposes criminal liability for "wholly passive" conduct. Accordingly, Defendant's motion for summary judgment as to Count 7 [Doc. 66] will be **GRANTED** and Count 7 will be **DISMISSED**.

### C. *Count 8 – Impossibility and Vagueness Claim*

Defendant argues that Plaintiff has not demonstrated that the Act is vague or impossible for him to comply with as he has testified that he knows about the rules, has law enforcement who are willing to answer his questions, and has not needed to ask law enforcement about this particular issue. [Doc. 74, p. 15].

Plaintiff's response is the same as his response to Count 7, and, as with Count 7, Count 8 does not address due process and the classification of Plaintiff. In his Amended Complaint, Plaintiff contends that the Act's restrictions related to living, working, standing, or sitting idly in specifically defined zones are impermissibly vague or otherwise require impossible compliance. However, Plaintiff has provided no further support for this claim. The Court will first examine the specified portions of Tenn. Code Ann. § 40-39-211(d)(1)(A)-(C) for unconstitutional vagueness, then address impossibility.

**1. Vagueness**

13

Case 3:19-cv-00377-RLJ-DCP Document 75 Filed 11/17/21 Page 13 of 17 PageID #: 978

The Court construes Plaintiff's vagueness challenge as an as-applied challenge. *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001) ("[I]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand."))]. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). This doctrine serves two goals: (1) "to ensure fair notice to the citizenry" and (2) "to provide standards for enforcement by the police, judges, and juries." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1104 (6th Cir. 1995). Courts adhere to a two-part test to determine whether the statute at hand is unconstitutionally vague in light of these goals.

First, a court determines whether the law gives a person "of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108. Second, a court asks whether the statute provides sufficiently "explicit standards for those who apply them." *Id*. But because statutes are inherently "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Id.* at 110. Rather, "[t]he degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). The Supreme Court has "expressed greater tolerance of enactments with civil rather than criminal penalties . . . [and] recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Id*. at 498–99. Moreover, "the

14

most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected rights." Because vagueness analysis is not mechanical, statutes are not unconstitutionally vague "simply because difficulty is found in determining whether certain marginal offenses fall within their language." *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963). Also, statutes are not unconstitutionally vague solely because they "may be stringent and harsh." *Barsky v. Bd. of Regents*, 347 U.S. 442, 448 (1954).

Here, Tenn. Code Ann. § 40-39-211(d)(1)(B) carries severe criminal sanctions. However, Plaintiff suggests no constitutionally protected rights threatened by its scope. Further, the statute carries a knowledge requirement as discussed above. Although the language of the statute in isolation presents troubling ambiguities, Plaintiff must establish "that the statute is vague . . ., not merely that the statute could be construed as vague in some hypothetical situation." *Krumrei*, 258 F.3d at 537 (*citing United States v. Avant*, 907 F.2d 623, 625 (6th Cir. 1990)).

A constitutional vagueness challenge requires more than hypotheticals when a plaintiff does not argue that First Amendment rights have been implicated. *See id*. Plaintiff has not presented argument or evidence, as to how the statute functions as it relates to him. "Hypotheticals are a favorite tool of those bringing vagueness challenges, but . . . almost any criminal or civil prohibition is susceptible to clever hypotheticals testing its reach." *Platt v. Bd. of Commissioners on Grievances & Discipline of Ohio Supreme Court*, 894 F.3d 235, 251 (6th Cir. 2018); *see Schickel v. Dilger*, 925 F.3d 858, 879 (6th Cir. 2019). To be sure, Plaintiff has dramatically altered his behavior in fear of transgressing this statute,

15

Case 3:19-cv-00377-RLJ-DCP   Document 75   Filed 11/17/21   Page 15 of 17   PageID #: 980

and he need not risk arrest and prosecution to challenge the constitutionality of a criminal statute. *See Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). But "[s]pecific facts matter," *Schickel*, 925 F.3d at 879 (*quoting Platt*, 894 F.3d at 248), and Plaintiff has not made any effort to explain how the statute has specifically compelled him to change his conduct other than a broad fear of enforcement or transgression, and this is not enough to sustain his vagueness challenge. The Court will now determine if the Act is void for impossibility.

### 2. Impossibility

Plaintiff likewise claims that adherence to the Act is a law "with which it is impossible to comply." [Doc. 20, p. 45]. However, Plaintiff's impossibility argument suffers the same deficiency as his vagueness arguments. Courts have articulated that "[h]olding an individual criminally liable for failing to comply with a duty imposed by statute, with which it is legally impossible to comply, deprives that person of his due process rights." *Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *19 (*quoting Doe v. Snyder*, 101 F. Supp. 3d 722, 724 (E.D. Mich. 2015)). Those courts have also articulated that such "impossibility" claims are "fact-dependent." *Id*.

Here, Plaintiff has pointed to no specific facts that support that compliance is impossible. Accordingly, Defendant's motion for summary judgment [Doc. 66] as to Count 8 will be **GRANTED** and Count 8 will be **DISMISSED**.

16

### III. Conclusion

Accordingly, for the reasons above, Defendant's motion for partial summary judgment [Doc. 66] will be **GRANTED** as to Counts 4, 7, & 8, and this action will be **DISMISSED**. An order consistent with this opinion will be entered.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge

17

Case 3:19-cv-00377-RLJ-DCP   Document 75   Filed 11/17/21   Page 17 of 17   PageID #: 982